Rodney G. VEST, Appellant,

v.

Marian SCHAFER and State of
Alaska, Appellees.

No. S–2091

Supreme Court of Alaska.

June 17, 1988.

Henry J. Camarot and Mark A. Sand-
berg, Camarot, Sandberg & Smith, Anchor-
age, and Kris Cassity, Anchorage, for ap-
pellant.

Deborah Vogt, Sp. Asst. Atty. Gen., and
Grace Berg Schaible, Atty. Gen., Juneau,
for appellees.

Before MATTHEWS, C.J., and
RABINOWITZ, BURKE, COMPTON
and MOORE, JJ.

## OPINION

MOORE, Justice.

### I.

This case is before us for the second time. For many years, the State's Longevity Bonus Program paid monthly benefits to twenty-five year Alaska residents, age 65 or over, who had been domiciled in Alaska before statehood. AS 47.45.010–.170 (prior to amendment in 1984). In 1984, this court held that the twenty-five year residency requirement and the pre-statehood domicile requirement violated the equal protection clause of the federal Constitution. *Schafer v. Vest*, 680 P.2d 1169, 1170–71 (Alaska 1984) (hereafter *"Schafer I"*).[1] The superior court issued injunctive and declaratory relief. The prevailing party in *Schafer I* was Rodney Vest and the class of plaintiffs he represented. The defendants were the State and Marian Schafer, who was the administrator of the Longevity Bonus Program.

In 1985, Vest moved for summary judgment on the issue of damages. He requested as damages the amount the plaintiff class members would have received had the statute made them eligible for the benefits.[2]

Vest advanced three different causes of action to justify the damage award: one under 42 U.S.C. § 1983, one directly under the federal Constitution, and one under the state constitution. He brought this action against the State, against Schafer in her official capacity, and against Schafer in her personal capacity.

The superior court granted summary judgment to the defendants for the following reasons: (1) the State is not a "person" subject to a section 1983 action; (2) sovereign immunity protects the State from damage suits directly under the federal and state constitutions; (3) the claims against Schafer in her official capacity should be regarded as claims against the State; and (4) in her personal capacity, Schafer is shielded by qualified immunity from liability under section 1983 and directly under the state and federal constitutions.

Vest appeals.

## II. DAMAGES AGAINST THE STATE

### A. *Is the State subject to suit under section 1983?*

■ Congress adopted the provision that is now 42 U.S.C. § 1983 in what is known as the Civil Rights Act of 1871, or the Ku Klux Klan Act.[3] The provision reads as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983 (1981). In *State v. Green*, 633 P.2d 1381 (Alaska 1981) (per curiam), we held that a state is not a "person" subject to suit under section 1983. That holding would support the superior court's dismissal of Vest's section 1983 claim against the State.

However, the proper interpretation of section 1983 is a matter of federal law, on which the United States Supreme Court has the final word.[4] Vest argues that

---

1. The legislature promptly amended the statute so that all one-year residents, age 65 or over, were eligible for the bonus. AS 47.45.010.–170 (as amended in ch. 38, § 2, SLA 1984).

2. Such an award could be as much as $150 million.

3. The popular names are not in the enactment, *see* ch. 22, § 1, 17 Stat. 13 (1871), but are used in *Monell v. Department of Social Servs. of the*

---

*City of New York,* 436 U.S. 658, 664, 98 S.Ct. 2018, 2022, 56 L.Ed.2d 611, 619 (1978) (Civil Rights Act) and *District of Columbia v. Carter,* 409 U.S. 418, 423, 93 S.Ct. 602, 605, 34 L.Ed.2d 613, 619 (1973) (Ku Klux Klan Act).

4. The Supreme Court recently decided to review the very question we now face, in *Smith v. Department of Pub. Health,* 428 Mich. 540, 410 N.W.2d 749 (1987), *cert. granted sub nom.*

*Green* is inconsistent with several Supreme Court cases, and urges this court to over-rule it. We respond to this argument.

In 1961, the Supreme Court held that cities are not subject to suit under section 1983. *Monroe v. Pape*, 365 U.S. 167, 187–91, 81 S.Ct. 473, 484–86, 5 L.Ed.2d 492, 505 (1961). The Court subsequently noted that "that being the case, [section 1983] could not have been intended to include States as parties defendant." *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, 96 S.Ct. 2666, 2669, 49 L.Ed.2d 614, 619 (1976).[5]

In *Monell v. New York City Department of Social Services*, 436 U.S. 658, 689, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611, 634 (1978) (7–2 majority), the Court reversed the *Monroe* result, explicitly holding that local government bodies were "persons who could be sued" under section 1983. Justice Brennan, the author of the *Monell* opinion, later observed that "Monell made it 'surely at least an open question whether § 1983 properly construed does not make the States liable for relief....' " *Quern v. Jordan*, 440 U.S. 332, 351, 59 L.Ed.2d 358, 373 (1979) (Brennan, J., concurring) (quoting *Hutto v. Finney*, 437 U.S. 678, 703, 98 S.Ct. 2565, 2580, 57 L.Ed.2d 522, 542–43 (1978) (Brennan, J., concurring)).

In 1979, the Supreme Court decided *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), the principal case debated by the two parties in the present litigation and the case relied on by this court in *State v. Green*. *Quern* was a sequel to *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

*Quern*, 440 U.S. at 333, 99 S.Ct. at 1141, 59 L.Ed.2d at 362. In *Edelman*, the Court held that the eleventh amendment prohibit-ed a federal district court from awarding retroactive welfare benefits wrongfully de-nied by state officials.[6] The majority of the Court viewed the eleventh amendment as barring federal court jurisdiction in un-consented suits against states or state offi-cers where the state is the real party in interest and where the plaintiff requests monetary damages to be paid out of the state treasury. *Edelman*, 415 U.S. at 663–68, 94 S.Ct. at 1355–58, 39 L.Ed.2d at 672–76.

On remand in *Edelman*, the district court ordered state officials to send to each member of the plaintiff class a notice advis-ing them that "there [were] state proce-dures available by which they [could] re-ceive a determination of whether they [were] entitled to past welfare benefits." *Quern*, 440 U.S. at 334, 99 S.Ct. at 1141, 59 L.Ed.2d at 363. Whether the eleventh amendment prohibited the federal court from issuing that order was the sole ques-tion before the Court in *Quern*. *Id.* at 334, 99 S.Ct. at 1141, 59 L.Ed.2d at 362. The Court found that the order did not consti-tute a retrospective award requiring pay-ment from the state treasury, and thus, under the rule reaffirmed in *Edelman*, did not violate the eleventh amendment. *Id.* at 347–49, 99 S.Ct. at 1148–49, 59 L.Ed.2d at 370–72. In the process, the Court once again held that Congress, by enacting sec-tion 1983, did not intend to abrogate the states' eleventh amendment immunity.[7]

---

*Will v. Michigan Dep't of State Police*, —— U.S. ——, 108 S.Ct. 1466, 99 L.Ed.2d 696 (1988).

5. However, "[t]he language in question from Fitzpatrick was not essential to the Court's hold-ing in that case." *Quern v. Jordan*, 440 U.S. 332, 339 n. 7, 99 S.Ct. 1139, 1144, n. 7, 59 L.Ed.2d 358, 365 (1979) (quoting *Hutto v. Finney*, 437 U.S. 678, 708–09 n. 6, 98 S.Ct. 2565, 2583, n. 6, 57 L.Ed.2d 522, 546 n. 6 (1978) (Powell, J., concurring)).

6. The eleventh amendment states:
The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of anoth-

er State, or by Citizens or Subjects of any Foreign State.

7. Congress has the power to abrogate the states' eleventh amendment immunity, especially when acting pursuant to its powers granted by the fourteenth amendment, which was adopted af-ter the eleventh amendment and which explicit-ly limits states' rights. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 453–56, 96 S.Ct. 2666, 2670–71, 49 L.Ed.2d 614, 620–21 (1976). Section 1983 was enacted primarily pursuant to Congress's pow-ers under the fourteenth amendment. *District of Columbia v. Carter*, 409 U.S. 418, 423, 93 S.Ct. 602, 605, 34 L.Ed.2d 613, 619 (1973).

*Id.* at 345, 99 S.Ct. at 1147, 59 L.Ed.2d at 369.

In *State v. Green,* we interpreted *Quern* "as holding not only that section 1983 does not abrogate the state's eleventh amendment immunity, but as holding that states are not 'persons' within the meaning of the section." *Green,* 633 P.2d at 1382. The consequences of the two are quite different: A holding that states are not "persons" subject to suit under section 1983 would bar all section 1983 suits against states, regardless of whether the suits were brought in state or federal court. On the other hand, a holding that section 1983 does not abrogate eleventh amendment immunity would leave unanswered the questions whether section 1983 suits against states could be brought in *state* court (since the eleventh amendment bars only federal jurisdiction) or, even in federal court, against states that have waived their eleventh amendment immunity. We now reaffirm *Green,* and supplement our prior reasoning.

The parties in *Quern* neither briefed nor argued the issue of whether Congress intended section 1983 to provide an action directly against states. *Quern,* 440 U.S. at 354, 99 S.Ct. at 1152, 59 L.Ed.2d at 375 (Brennan, J., concurring). Furthermore, the sole question presented, according to the Court, was whether the district judge's order violated the eleventh amendment. *Id.* at 334, 99 S.Ct. at 1141, 59 L.Ed.2d at 362. Nevertheless, in the *Quern* opinion, the majority used language broader than necessary to dispose of the eleventh amendment question presented:

> [W]e simply are unwilling to believe, on the basis of such slender 'evidence,' that Congress intended by the general language of § 1983 to override the traditional sovereign immunity of the States.

8. Then–Justice Rehnquist, author of the majority opinion in *Quern,* previously opposed an expansive reading of § 1983. *See, e.g., Monell,* 436 U.S. at 714–24, 98 S.Ct. 2018, 2047–53, 56 L.Ed.2d 650–57 (Rehnquist, J., dissenting).

9. Justice Brennan has been a leading advocate of an expansive reading of § 1983. *See, e.g.,*

*Quern,* 440 U.S. at 341, 99 S.Ct. at 1145, 59 L.Ed.2d at 367 (Rehnquist, J.).[8] By using the phrase "traditional sovereign immunity" instead of "eleventh amendment immunity," the Court suggested that Congress did not intend states to be subject to section 1983 suits *at all,* as opposed to just not in federal court.

Perhaps for that reason, Justice Brennan did not join the majority opinion in *Quern.*[9] He characterized the majority opinion as "conclud[ing], in what is patently dicta, that a State is not a "person" for purposes of 42 USC § 1983...." *Id.* at 350, 99 S.Ct. at 1150, 59 L.Ed.2d at 372 (Brennan, J., concurring, this portion with which Marshall, J., joined). He then argued that to do so was both unnecessary and wrong.

Justice Brennan's statement that the Court concluded that states are not "persons" under section 1983 is not undisputed. For example, Justice Rabinowitz, dissenting in *Green,* expressed the view that the *Quern* majority carefully avoided the issue. *Green,* 633 P.2d at 1382 (Rabinowitz, J., dissenting). Similarly, in *Della Grotta v. Rhode Island,* 781 F.2d 343, 348 n. 6 (1st Cir.1986), the First Circuit stated: "In *Quern,* the majority did not decide whether a state is a 'person' although challenged to do so by Justice Brennan in his concurrence."

However, as explained above, we remain convinced that the broad language of the majority opinion in *Quern* addresses the issue, albeit obliquely. Furthermore, even if *Quern* did not definitively hold that states are not "persons" subject to suit under section 1983, we see two reasons why that result follows from *Quern.*

First, we note that the Supreme Court has interpreted the word "person" in a variety of other contexts. Annotation, *Supreme Court's Views as to Meaning of Term "Person," as Used in Statutory or*

*Maine v. Thiboutot,* 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (Brennan, J.) (holding that § 1983 applies to violations of any federal statute, not just equal rights legislation); *Monell,* 436 U.S. at 658, 98 S.Ct. at 2018, 56 L.Ed.2d at 611 (Brennan, J.).

*Constitutional Provision,* 56 L.Ed.2d 895 (1978). The only clear consensus is that the word is not a term of art with a fixed meaning. *Id.* at 899. "Whether the term 'person' when used in a federal statute includes a State cannot be abstractly declared, but depends upon its legislative environment." *Sims v. United States,* 359 U.S. 108, 112, 79 S.Ct. 641, 645, 3 L.Ed.2d 667, 671 (1959).[10] Instead, courts must examine "[t]he purpose, the subject matter, the context, the legislative history, and the executive interpretation of the statute." *Pfizer Inc. v. India,* 434 U.S. 308, 313, 98 S.Ct. 584, 588, 54 L.Ed.2d 563, 569 (1978) (quoting *United States v. Cooper Corp.,* 312 U.S. 600, 605, 61 S.Ct. 742, 744, 85 L.Ed. 1071, 1074–75 (1941)).

In examining the purpose and context of the enactment of the Civil Rights Act of 1871, we observe that, in 1871, Congress had not yet conferred federal question jurisdiction on federal courts.[11] When jurisdiction was lacking in the federal district courts, federal rights were vindicated in state courts with the potential for review by the United States Supreme Court. Dissatisfied with this reliance on state courts, during the Reconstruction Era following the Civil War, Congress passed the Civil Rights Act of 1871[12] and bestowed general federal question jurisdiction on lower federal courts several years later. As for the purpose of the Civil Rights Act of 1871, the Supreme Court has stated:

> With the growing awareness that this reliance [on state courts to vindicate federal rights] had been misplaced, ... Congress recognized the need for original federal court jurisdiction as a means to provide at least indirect federal control

over the unconstitutional actions of state officials.

*District of Columbia v. Carter,* 409 U.S. 418, 428, 93 S.Ct. 602, 608, 34 L.Ed.2d 613, 622 (1973) (footnote omitted). In *Mitchum v. Foster,* 407 U.S. 225, 240–41, 92 S.Ct. 2151, 2161, 32 L.Ed.2d 705, 716–17 (1972) (bracketed alterations in the original), the Court gave weight to remarks in the legislative history of the Civil Rights Act of 1871 which expressed that view:

> As Representative Lowe stated, the "records of the [state] tribunals are searched in vain for evidence of effective redress [of federally secured rights].... The case has arisen ... when the Federal Government must resort to its own agencies to carry its own authority into execution. Hence this bill throws open the doors of the United States courts to those whose rights under the Constitution are denied or impaired." Cong Globe, 42d Cong., 1st Sess., 374–376 (1871). This view was echoed by Senator Osborn: "If the State courts had proven themselves competent to suppress the local disorders, or to maintain law and order, we should not have been called upon to legislate.... We are driven by existing facts to provide for the several states in the South what they have been unable to fully provide for themselves; i.e., the full and complete administration of justice in the courts. And the courts with reference to which we legislate must be the United States courts." *Id.,* at 653.

The Court has concluded that "in the final analysis, § 1 of the 1871 Act may be viewed as an effort 'to afford a federal right in federal courts....'" *District of Columbia v. Carter,* 409 U.S. at 428, 93

---

**10.** Examples of statutes in which the Court construed "person" to embrace states include provisions of the federal antitrust laws authorizing any "person" to recover treble damages for antitrust violations, *Hawaii v. Standard Oil Co.,* 405 U.S. 251, 261, 92 S.Ct. 885, 890, 31 L.Ed.2d 184, 191–92 (1972); and provisions of the Internal Revenue Code imposing a special tax on "persons" that sell liquor wholesale, *Ohio v. Helvering,* 292 U.S. 360, 370, 54 S.Ct. 725, 727, 78 L.Ed. 1307, 1310 (1934). In some statutes, the word "person" has even been construed to include the United States. *See Far East Conference v. United States,* 342 U.S. 570, 576, 72 S.Ct. 492, 495, 96 L.Ed. 576, 583 (1952) (interpreting the Shipping Act of 1916).

**11.** Congress granted federal question jurisdiction to the federal courts in 1875. Act of March 3, 1875, ch. 137, § 1, 18 (part 3) Stat. 470.

**12.** Section 1 of the Civil Rights Act of 1871 granted jurisdiction to the lower federal courts to hear § 1983 actions. This grant is now codified at 28 U.S.C. § 1343(a)(3) (1976).

S.Ct. at 608, 34 L.Ed.2d at 623 (quoting *Monroe v. Pape*, 365 U.S. 167, 180, 81 S.Ct. 473, 480, 5 L.Ed.2d 492, 501 (1961)).

The historical context and congressional purpose guide our interpretation of *Quern*, in which the Court held that Congress, by enacting section 1 of the Civil Rights Act of 1871, did not intend to subject states to suit in federal court by abrogating their eleventh amendment immunity. *Quern*, 440 U.S. at 340–42, 99 S.Ct. at 1144–46, 59 L.Ed.2d at 366–67. If section 1 was primarily designed to allow vindication of federal rights in federal courts, we believe it would have been anomalous for Congress to have precluded suits under the statute against states in *federal* court but permitted such actions in *state* courts.[13] Therefore, it follows from *Quern* that states are not subject to suit under section 1983 in federal or state court.

A second reason this result follows from *Quern* is that much of the rationale in *Quern* which explains why states are not subject to section 1983 actions in federal court applies equally well to explain why states should not be subjected to section 1983 actions in any court. In particular, the Court found the word "person" too general, *Quern*, 440 U.S. at 341–43, 99 S.Ct. at 1145–46, 59 L.Ed.2d at 367–68, and the congressional debate on section 1 of the Act too scanty to warrant the conclusion that Congress intended to override traditional sovereign immunity:

> Given the importance of the States' traditional sovereign immunity, if in fact the Members of the 42d Congress believed that § 1 of the 1871 Act overrode that immunity, surely there would have been lengthy debate on this point and it would have been paraded out by the opponents of the Act along with the other evils that they thought would result from the Act. Instead, § 1 passed with only limited debate and not one Member of Congress mentioned the Eleventh Amendment or the direct financial consequences to the States of enacting § 1. We can only conclude that this silence on the matter is itself a significant indication of the legislative intent of § 1.

*Id.* at 343, 99 S.Ct. at 1146, 59 L.Ed.2d at 368.[14] The relative lack of debate on this issue indicates an understanding at the time that the Act would not expose states to liability. We think this rationale serves to negate states' liability in state court as well as federal court. *See Smith*, 410 N.W.2d at 766; Zagrans, *"Under Color of" What Law: A Reconstructed Model of Section 1983 Liability*, 71 Va.L.Rev. 499, 549–550 (1985). Therefore, we continue to believe our result in *Green* follows from *Quern*.

In decisions post-dating *Quern*, some courts have held that states *are* "persons" under section 1983.[15] However, the majori-

---

13. *See Smith v. Department of Pub. Health*, 428 Mich. 540, 410 N.W.2d 749, 766 (Mich.1987) (Brickley, J., concurring, this portion with which a majority of the justices joined), *cert. granted sub nom. Will v. Michigan Dep't of State Police*, — U.S. —, 108 S.Ct. 1466, 99 L.Ed.2d 696 (1988).

14. This view of the legislative history is not undisputed. Justice Brennan, in his concurrence in *Quern*, saw it entirely differently. First, he observed that the fourteenth amendment on its face is directed at the states themselves, and not merely at state officers. *Quern*, 440 U.S. at 354–55, 99 S.Ct. at 1152, 59 L.Ed.2d at 375–76 (Brennan, J., concurring, this portion with which Marshall, J., joined). He then stated:

> It is logical to assume, therefore, that § 1983 in effectuating the provisions of the Amendment by "interpos[ing] the federal courts be-

tween the States and the people, as guardians of the people's federal rights[,]" is also addressed to the States themselves.

*Id.* at 355, 99 S.Ct. at 1153, 59 L.Ed.2d at 376 (citation omitted). Finally, Justice Brennan gave several pointed examples from the recorded legislative history of congressmen who believed that § 1 of the Civil Rights Act of 1871, now § 1983, was aimed at states themselves in addition to state officials. The majority in *Quern* considered Justice Brennan's examples to be "occasional remarks" in the legislative history. *Quern*, 440 U.S. at 341, 99 S.Ct. at 1145, 59 L.Ed.2d at 366.

15. *See Della Grotta v. Rhode Island*, 781 F.2d 343, 348 (1st Cir.1986); *Meeker v. Addison*, 586 F.Supp. 216, 225 (S.D.Fla.1984); *Harris v. Arizona Bd. of Regents*, 528 F.Supp. 987, 992 (D.Ariz. 1981); *Irwin v. Calhoun*, 522 F.Supp. 576, 583–84 (D.Mass.1981); *Marrapese v. Rhode Island*, 500 F.Supp. 1207, 1212 (D.R.I.1980).

ty view is that states are *not* "persons." [16] If the Supreme Court has not definitively resolved this controversy, neither has Congress. Although Senate bills were introduced in the 95th, 96th, and 97th Congresses that defined "persons" to include states, those bills never passed.[17]

It is undisputed that the fourteenth amendment limits state sovereignty, and that Congress has the power to create causes of action under it against states. However, we need not conclude that Congress exercised that power, based only upon the general term "person" and the debatable legislative history of the Civil Rights Act of 1871. We perceive no convincing arguments based either on Supreme Court precedent, the text of § 1983, or its legislative history, that compel us to overturn our decision in *State v. Green* that states are not persons under section 1983. Therefore, we uphold the superior court's grant of summary judgment to the State on the section 1983 action.

B. *The action for damages against the State arising directly under the federal Constitution*

■ In *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388, 389, 91 S.Ct. 1199, 2001, 29 L.Ed.2d 619, 622 (1971), the Supreme Court held that a violation of the fourth amendment by a federal agent acting under color of his authority gave rise to a cause of action for damages directly under the Constitution, even though no such action had been provided by statute.[18] By analogy, Vest seeks damages against the State directly under the fourteenth amendment's equal protection clause.

The superior court granted summary judgment to the State on Vest's *Bivens* -type claim on the ground that Alaska's statutory sovereign immunity barred the suit. As an alternative holding, the court also explained that a *Bivens* -type damage remedy should not be allowed under the circumstances of this case. We affirm the summary judgment on the ground that a *Bivens* -type damage remedy is inappropriate in this case. We do not reach the sovereign immunity question.

When a court finds a statute unconstitutional, the traditional remedy is declaratory or injunctive relief. Professor Davis stated: "Neither the United States nor any state has ever been liable for damages because its legislative body has enacted legislation that is later held unconstitutional." [19] K. Davis, *Administrative Law*

---

16. *Ruiz v. Estelle,* 679 F.2d 1115, 1137, *modified on other grounds,* 688 F.2d 266 (5th Cir.1982) *cert. denied,* 460 U.S. 1042, 103 S.Ct. 1438, 75 L.Ed.2d 795 (1983); *Aubuchon v. Missouri,* 631 F.2d 581, 582 (8th Cir.1980), *cert. denied,* 450 U.S. 915, 101 S.Ct. 1358, 67 L.Ed.2d 341 (1981); *Coffin v. South Carolina Dep't of Social Servs.,* 562 F.Supp. 579, 585 (D.S.C.1983); *Florida Businessmen for Free Enter. v. Florida,* 499 F.Supp. 346, 350 (N.D.Fla.1980); *Merritt for Merritt v. Idaho,* 696 P.2d 871 (Idaho 1985); *Woodbridge v. Worcester State Hosp.,* 423 N.E.2d 782, 786 n. 7 (Mass.1981): *Smith v. Department of Pub. Health,* 428 Mich. 540, 410 N.W.2d 749, 750 (Mich.1987), *cert. granted sub nom. Will v. Michigan Dep't of State Police,* — U.S. —, 108 S.Ct. 1466, 99 L.Ed.2d 696 (1988); *Edgar v. Washington,* 595 P.2d 534, 537 (Wash.1979), *cert. denied,* 444 U.S. 1077, 100 S.Ct. 1026, 62 L.Ed.2d 760 (1980); *Boldt v. Wisconsin,* 101 Wis.2d 566, 305 N.W.2d 133, 143–44, *cert. denied,* 454 U.S. 973, 102 S.Ct. 524, 70 L.Ed.2d 393 (1981).

17. S. 990, 97th Cong., 1st Sess. § 2(2)(b) (1981); S. 1983, 96th Cong., 1st Sess. § 2(2)(b) (1979); S. 35, 95th Cong., 1st Sess. § 2(2) (1977); *see also* Sagafi–Nejad, *Proposed Amendments to Sec-* *tion 1983 Introduced in the Senate,* 27 St.Louis U.L.J. 373, 373–76 (1983).

18. The three dissenters believed that by creating such a damage action, the Court improperly encroached on Congress's power to legislate. *Bivens,* 403 U.S. at 411–12, 427–28, 430, 91 S.Ct. at 2012, 2020, 2021, 29 L.Ed.2d at 636, 645, 646 (separate dissents of Burger, C.J., Black, J., and Blackmun, J.).

19. *See also HFH, Ltd. v. Superior Court of Los Angeles County,* 15 Cal.3d 508, 125 Cal.Rptr. 365, 373, 542 P.2d 237, 245 (1975), *cert. denied,* 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) ("both constitutional and institutional understandings require that legislative acts, even if improper, find their judicial remedy in the undoing of the wrongful legislation, not in money damages against the state"). *But see Osterndorf v. Turner,* 426 So.2d 539, 545 (Fla.1982) (after invalidating a difference in state tax treatment that was based on length of residency, Florida's highest court granted a refund of past taxes to the litigants who challenged the statute).

We also note that this discussion is about *judicially* -created remedies, in the absence of

*Treatise* § 25.00–4 at 400 (Supp.1982).[20] For a court to hold a state liable for unconstitutional legislation would introduce a profound conservative tilt into the lawmaking process. Legislators would become reluctant to legislate, knowing that money damages were at stake if a court ultimately disagrees with their own appraisal of the constitutionality of a bill.[21]

Nevertheless, we must examine whether federal law requires us to assess damages in this case. In the *Bivens* line of cases, the Supreme Court has repeatedly held that, when a constitutional right has been violated by a federal agent, the lack of statutory remedy does not bar federal courts from ordering monetary relief. *See Bush v. Lucas,* 462 U.S. 367, 378, 103 S.Ct. 2404, 2411, 76 L.Ed.2d 648, 657 (1983); *Carlson v. Green,* 446 U.S. 14, 19, 100 S.Ct. 1468, 1472, 64 L.Ed.2d 15, 24 (1980) (*Bivens*-type action even where Congress had provided a remedy); *Davis v. Passman,* 442 U.S. 228, 99 S.Ct. 2264, 60 L.Ed.2d 846 (1979) (*Bivens*-type action against federal agents to vindicate fifth amendment equal protection rights). In fact, federal courts *must* order relief,

where appropriate. As the Supreme Court has summarized:

Bivens established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right. Such a cause of action may be defeated in a particular case, however, in two situations. The first is when defendants demonstrate "special factors counselling hesitation in the absence of affirmative action by Congress." The second is when defendants show that Congress has provided an alternative remedy which it explicitly declared to be a substitute for recovery directly under the Constitution and viewed as equally effective.

*Carlson,* 446 U.S. at 18–19, 100 S.Ct. at 1471, 64 L.Ed.2d at 23.

Without deciding the issue, we will assume in this case that the federal Constitution requires state courts to award monetary damages under circumstances in which it would be appropriate under the *Bivens* line for a federal court to award damages.[22] However, those circumstances have not yet included suits such as the one now before this court.[23] Vest's action lies

---

statutes allowing or requiring damages against states. When Congress has created a damage remedy against states, the courts will implement it. For example, in *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court reversed a district court's refusal on eleventh amendment grounds to award damages, in the form of retroactive benefits, for state legislation that violated Title VII of the Civil Rights Act of 1964. The Court's reason was that Title VII, which prohibits sex-based employment discrimination, includes a congressional authorization of damages against states. *Id.* at 448–50 nn. 1–5, 456–57, 96 S.Ct. at 2667–68 nn. 1–5, 2671–72, 49 L.Ed.2d at 617–18 nn. 1–5, 621–22.

20. The quoted sentence was in a case discussion not included in corresponding sections 27.-37–.40 of K. Davis, *Administrative Law Treatise* (2d ed. 1984).

21. Since the legislators have absolute immunity, it is not their personal funds that would be at risk. Rather, at risk are the State's funds, over which the legislators have control. *See* Alaska Const. art. IX, § 13.

22. However, not only has the Supreme Court not yet resolved whether state courts must hear federal *Bivens*-type actions, but it has not even

resolved whether state courts must hear § 1983 actions. *See Maine v. Thiboutot,* 448 U.S. 1, 3 n. 1, 100 S.Ct. 2502, 2503, n. 1, 65 L.Ed.2d 555, 558 n. 1 (1980). *Cf. Testa v. Katt,* 330 U.S. 386, 389–91, 67 S.Ct. 810, 812–13, 91 L.Ed. 967, 969–70 (1947) (state courts must enforce federal Emergency Price Control Act, in which Congress provided that wronged buyers may sue seller in any court of competent jurisdiction).

The assumption that state courts (with Supreme Court review) will adequately protect federal rights was one side of the debate about whether the Constitution should be written to provide for lower federal courts. The framers ultimately adopted a compromise, allowing but not mandating the existence of lower courts. *See* U.S. Const. art. III, § 1; H. Hart & H. Wechsler, *The Federal Courts and the Federal System* 11–12 (P. Bator, P. Mishkin, D. Shapiro & H. Wechsler 2d ed. 1973).

23. We have found no *Bivens*-type case at the Supreme Court level other than those against federal agents acting under color of their authority. Thus, *Bivens*-type actions have served as a complement to § 1983 actions against state agents. Federal agents are not subject to suit under § 1983.

within the intersection of two overlapping categories of suits, in neither of which the Supreme Court has yet recognized *Bivens*-type remedies: actions against states, and actions under the fourteenth amendment.[24] However, we do not imply that the mere lack of federal precedent establishes the impropriety of a *Bivens*-type action such as the present one.

We first analyze *Bivens*-type actions against a state. One reason why no federal precedent exists is that most such claims would be barred in federal court by the eleventh amendment as currently interpreted.[25]

Even if a state waived its eleventh amendment immunity, it is unlikely that federal courts would create a *Bivens*-type remedy against a state. As already noted, the Supreme Court has stated that *Bivens*-type actions are inappropriate where there are "special factors counselling hesitation

in the absence of affirmative action by Congress." *Carlson*, 446 U.S. at 18, 100 S.Ct. at 1471, 64 L.Ed.2d at 23 (citations omitted). Such special factors have included questions of federal fiscal policy;[26] the demands of military discipline added to the express constitutional grant to Congress of authority over the military;[27] and suits against members of Congress, who "enjoy such independent status in our constitutional scheme as to suggest that judicially created remedies against them might be inappropriate."[28]

States also enjoy such independent status in our constitutional scheme. Judicially created remedies would be similarly inappropriate against them because Congress, where the states are represented, is in a better position than the federal judiciary to weigh the competing policies implicated in creating an entirely novel damage remedy against states.[29,30]

---

24. *Bivens* was an action for an alleged violation of the fourth amendment. 403 U.S. at 389, 91 S.Ct. at 2001, 29 L.Ed.2d at 622. *Davis* was under the fifth amendment, 442 U.S. at 230, 99 S.Ct. at 2269, 60 L.Ed.2d at 853; *Carlson*, the eighth amendment, 446 U.S. at 19, 100 S.Ct. at 1472, 64 L.Ed.2d at 24; and *Bush*, the first amendment, 462 U.S. at 368, 103 S.Ct. at 2406, 76 L.Ed.2d at 651.

25. Such a claim against a state would be allowed in federal court only if the state consented to be sued. However, this view of the eleventh amendment has spawned considerable argument. *See e.g.*, Shapiro, *Wrong Turns: The Eleventh Amendment and the Pennhurst Case*, 98 Harv.L.Rev. 61, 68 (1984); Field, *The Eleventh Amendment and Other Sovereign Immunity Doctrines: Congressional Imposition of Suit Upon the States*, 126 U.Pa.L.Rev. 1203, 1261–78 (1978). Four justices sharply disagree with the Supreme Court's present construction of the eleventh amendment. Their view, as expressed in *Atascadero State Hospital v. Scanlon*, 473 U.S. 234, 247, 301, 105 S.Ct. 3142, 3149–50, 3177, 87 L.Ed.2d 171, 183, 217 (1985) (Brennan, J. dissenting, joined by Marshall, Blackmun, and Stevens, JJ.), is that the eleventh amendment is nothing more than a limitation on party-based jurisdiction (e.g., diversity jurisdiction); as such, it has no effect on federal question jurisdiction of federal courts. If the eleventh amendment were re-interpreted this way, it would not bar *Bivens*-type claims against states from being raised in federal court. Justice Scalia's view is not yet known, *see Welch v. State, Dep't of Highways & Pub. Transp.*, 483 U.S. —, —, 107 S.Ct. 2941, 2957–58, 97 L.Ed.2d 389, 411

(1987) (Scalia, J., concurring, was unwilling to reach the possible re-interpretation of the eleventh amendment because the "presentation focused on other matters"), nor is that of Justice Kennedy.

26. *See Bush*, 462 U.S. at 376, 103 S.Ct. at 2410, 76 L.Ed.2d at 656 (citing *United States v. Standard Oil Co.*, 332 U.S. 301, 311, 67 S.Ct. 1604, 1609–10, 91 L.Ed. 2067, 2073 (1947)).

27. *Chappell v. Wallace*, 462 U.S. 296, 301–04, 103 S.Ct. 2362, 2366–68, 76 L.Ed.2d 586, 591–93 (1983).

28. *See Carlson*, 446 U.S. at 19, 100 S.Ct. at 1472, 64 L.Ed.2d at 24 (citing *Davis*, 442 U.S. at 246, 99 S.Ct. at 2277, 60 L.Ed.2d at 863 (in which, in spite of the special factor counselling hesitation, the Court found a *Bivens* action could be maintained against a Congressman, if his allegedly-unconstitutional actions were outside the protection afforded by the speech or debate clause)).

29. In *Garcia v. San Antonio Metropolitan Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed. 2d 1016 (1985), the Supreme Court determined that no islands of state sovereignty are judicially protected from the reach of Congress's commerce clause powers. The Court emphasized that the framers of the Constitutiona envisioned that Congress itself, made up of representatives of states, would adequately protect states' residual sovereignty. *Id.* at 550–52, 105 S.Ct. at 1017–18, 83 L.Ed.2d at 1033–34. The Court explained: "We continue to recognize that the

The second category of *Bivens*-type suit that the Supreme Court has not yet recognized consists of suits under the fourteenth amendment. The Supreme Court was faced with the question of whether to recognize such a suit against a school board in *Mt. Healthy City School Dist. Bd. of Ed. v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (since this case was pre-*Monell,* the school board could not be sued directly under § 1983). The Court thought the question was "extremely important," yet avoided answering it.[31] *Id.* at 278, 97 S.Ct. at 571, 50 L.Ed.2d at 478. In addition to the concerns to which we alluded above—separation of powers (within the federal government) and federalism—it appears to us that the structure of the fourteenth amendment itself militates against such *Bivens*-type remedies. Section 5 of the amendment states: "The Congress shall have power to enforce, by appropriate legislation, the provisions of this article." U.S. Const. amend. XIV, § 5. While section 5 does not give exclusive power to Congress at the expense of the judiciary, we view it as a thumb on the scale, tipping the balance toward greater deference to Congressional judgment regarding appropriate remedies.[32] For these reasons, when Congress has not spoken, we conclude that federal courts would not create a constitutional damage remedy in a suit under the fourteenth amendment and against a state.[33]

The question remains whether the Constitution requires *state* courts to create a remedy prohibited in federal court.[34] The decision whether to imply a damage remedy for constitutional violations is a policy determination—in this case, federal policy. We believe the nation has as much interest in the continuing vitality of a state's legislative process as does the state itself. Justice Brandeis envisioned that each state may "serve as a laboratory" for social and economic change: "Denial of the right to experiment may be fraught with serious consequences to the Nation." *New State Ice Co. v. Liebmann,* 285 U.S. 262, 311, 52 S.Ct. 371, 386, 76 L.Ed. 747, 771 (1932) (Brandeis, J., dissenting).[35] It would be

States occupy a special and specific position in our constitutional system.... The political process ensures that laws that unduly burden the States will not be promulgated."

**30.** Two justices of the Michigan Supreme Court posited a separate reason why *Bivens*-type remedies would be inappropriate against states:

> In *Carlson, supra,* the Supreme Court noted that a *Bivens* remedy not only compensated victims, but also acted as a deterrent to unconstitutional activity by federal officials. However, making governmental bodies, as opposed to individual officials, liable for damages for constitutional violations lessens the deterrent effect of a *Bivens*-style remedy.

*Smith,* 410 N.W.2d at 789 (Brickley, J., concurring, joined by Riley, C.J.).

**31.** The Court stated:

> The question of whether the Board's arguments [that the Board was not a "person" under § 1983] should prevail, or whether as respondent urged in oral argument, we should, by analogy to our decision in Bivens v. Six Unknown Fed. Narcotics Agents, imply a cause of action directly from the Fourteenth Amendment which would not be subject to the limitations contained in § 1983, is one which has never been decided by this Court. Counsel for respondent at oral argument suggested that it is an extremely important question and one which should not be decided on this record. We agree with respondent.

*Mt. Healthy,* 429 U.S. at 278, 97 S.Ct. at 571, 50 L.Ed.2d at 478 (citation omitted). It appears that the Supreme Court has not answered this question since then.

**32.** None of the other constitutional amendments (e.g., 1st, 4th, 5th, 8th) under which other *Bivens*-type claims have been allowed by the Court have contained this express grant of power to Congress.

**33.** We do not imply that a *Bivens*-type action would be allowed if the suit were only against a state, or only under the fourteenth amendment, but not both.

**34.** There are many situations in which federal courts are required to defer to state courts. Examples of such rules include the eleventh amendment; the Tax Injunction Act, 50 Stat. 738, now 28 U.S.C. § 1341; and *Younger v. Harris* abstention, *see Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). One underlying motivation behind these rules is to reduce friction in federal-state relations. In the present case, *Bivens*-type remedies against states would presumably lead to less federal-state friction if created by state courts than if created by federal courts.

**35.** Brandeis's notion of states as laboratories was expressed in a dissent, but is now often repeated in majority opinions. *See, e.g., Garcia,*

poor federal policy to require state judiciaries, in the absence of congressional mandate, to impose damages for unconstitutional state legislation. We hold that a *Bivens*-type action, brought in state court against the State, cannot be allowed to stand when it is grounded on a claim that the legislature enacted a law later found to violate the equal protection clause of the fourteenth amendment of the Constitution.[36] Therefore, we uphold the superior court's grant of summary judgment to the State on the *Bivens*-type action under the federal Constitution.

### C. The action for damages against the State, arising directly under the Alaska Constitution

■ Vest argues that he is entitled to an award of damages under the equal protection clause of the Alaska Constitution. This is analogous to *Bivens*-style relief under the federal Constitution.[37]

The superior court, in its memorandum of decision, assumed (without deciding) that Alaska law allows *Bivens*-type actions under the state constitution. It then disposed of the state *Bivens*-type claims at the same time as the federal *Bivens* claims, principally on sovereign immunity grounds

but also on the ground that a *Bivens*-type remedy is inappropriate in this case.

This court was asked to recognize *Bivens*-type damage remedies arising directly under the state constitution in several previous cases. *See Walt v. State,* 751 P.2d 1345, 1353 (Alaska 1988); *State v. Haley,* 687 P.2d 305, 317–18 (Alaska 1984); *Alaska Pacific Assurance Co. v. Brown,* 687 P.2d 264, 275 (Alaska 1984); *King v. Alaska State Hous. Auth.,* 633 P.2d 256, 259–61 (Alaska 1981). In none of these four cases did we resolve whether such actions can exist.[38]

We do not resolve this question in this case because Vest's claim would be inappropriate for a *Bivens*-type action.[39] As already discussed, we do not believe it proper for the judiciary to assess damages against the State on the ground that the legislature enacted a law later held unconstitutional, in the absence of a statute allowing or requiring such damages.[40]

### III. DAMAGES AGAINST SCHAFER IN HER OFFICIAL CAPACITY

■ Under section 1983, a damage suit against a state agent in her official capacity is treated as a suit against the state

---

469 U.S. at 546, 105 S.Ct. at 1015, 83 L.Ed.2d at 1031.

**36.** We do not decide that unconstitutional behavior of any type can never give rise to a federal *Bivens*-type action against the State in state court.

**37.** Vest did not sue under AS 09.50.250 (entitled "Actionable claims against the state"). He seeks damages for the enactment and execution of the Longevity Bonus Program, neither of which would be allowed under AS 09.50.250. *Cf. Division of Corrections v. Neakok,* 721 P.2d 1121, 1132–33 (Alaska 1986) (decisions involving "basic planning or policy formulation will be considered discretionary," and will be immune under AS 09.50.250).

**38.** In *Walt,* we decided that the factual context made a *Bivens*-type action under the state constitution inappropriate. In particular, the legislature had already provided for an administrative remedial system. 751 P.2d at 1353. In *Haley,* we found that the legislature had already created a cause of action under AS 09.50.250. 687 P.2d at 317–18. We decided *Alaska Pacific Assurance Co.* on other grounds. In *King,* we

held that a *Bivens*-type action was inappropriate in that case because of "special factors counselling hesitation" in creating a damages remedy for a constitutional violation. *King,* 633 P.2d at 259–60.

Some other states have recognized *Bivens*-type actions under their constitutions. *See Widgeon v. Eastern Shore Hospital Center,* 479 A.2d 921 (Md.1984); *Smith v. Department of Pub. Health,* 428 Mich. 540, 410 N.W.2d 749, 751 (1987). For a more lengthy discussion of *Bivens*-type actions in other states, see *id.* at 796 (Boyle, J., concurring in part and dissenting in part, joined by Cavanaugh, J.).

**39.** Consequently, we do not reach whether the State has sovereign immunity from such a suit.

**40.** Furthermore, the state constitution provides that "[t]he legislature shall establish procedures for suits against the State." Alaska Const. art. II, § 21. One plausible interpretation of this clause is that it delegates to the legislature the exclusive authority to create remedies in suits against the State. If so, judicially created damage remedies against the State would be prohibited. Since the parties have not argued this point, we need not resolve it.

itself. The Supreme Court unanimously stated:

> Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. Official-capacity suits, in contrast, "generally represent only another way of pleading an action against an entity of which an officer is an agent." As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is *not* a suit against the official personally, for the real party in interest is the entity. Thus, while an award of damages against an official in his personal capacity can be executed only against the official's personal assets, a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself.

*Kentucky v. Graham*, 473 U.S. 159, 165–66, 105 S.Ct. 3099, 3105, 87 L.Ed.2d 114, 121 (1985) (citations and footnote omitted; emphasis in original).[41]

For that reason, we need not separately entertain the portion of Vest's section 1983 suit against Schafer in her official capacity. It is a suit against the State, which, as we have just reaffirmed, is not permitted under section 1983.

Similarly, we see no reason to treat a federal *Bivens*-type official-capacity claim differently from a suit against the State. Nor do we see any reason that state law should be any different than federal law in this regard. Thus, all of Vest's claims against Schafer in her official capacity are claims against the State. As we have just held, none of those claims against the State can stand.

## IV. DAMAGES AGAINST SCHAFER IN HER PERSONAL CAPACITY

▇▇ The superior court granted summary judgment to Schafer in her personal capacity on the ground that she was protected by qualified immunity for her official acts. In arriving at that conclusion, the court determined that Schafer had not violated clearly established constitutional law in administering the Longevity Bonus Program. We do not reach the issue of qualified immunity,[42] because we find that Schafer in her personal capacity is not a proper defendant in this action.[43]

Vest's complaint and amended complaint in this action do not specify whether Schafer was sued personally, officially, or both.[44] In this situation, " '[t]he course of proceedings' ... typically will indicate the nature of the liability sought to be imposed." *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114, 122 n. 14 (1985) (quoting *Brandon v. Holt*, 469 U.S. 464, 469, 105 S.Ct. 873, 876, 83 L.Ed.2d 878, 884 (1985)).

One facet of this determination is whether the State is the "real party in interest." *Kentucky*, 473 U.S. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 121. The Eleventh Circuit stated: "Whether a state officer is being sued for damages in an official or an individual capacity is not mere semantics; the question is whether the plaintiff is reasonably seeking relief from the state coffers or from the individual's assets." *Gamble v. Florida Dep't of Health and Rehabilitative Servs.*, 779 F.2d 1509, 1513 (11th Cir.1986) (footnote omitted). Accord-

---

**41.** Although *Kentucky* arose in federal court, the portion of the opinion regarding official-capacity suits *does not seem to depend on eleventh amendment considerations.* It appears that the Court was pronouncing the law of § 1983 actions in general, not just § 1983 actions in federal court.

**42.** This court may affirm a summary judgment on grounds different from those advanced by the trial court. *Breck v. Ulmer,* 745 P.2d 66, 71 n. 10 (Alaska 1987).

**43.** The cases discussed in this section were decided under federal law. However, for the same reasons, we find that Schafer is not a proper defendant for purposes of Vest's state claims as well.

**44.** At the time the superior court granted summary judgment to the defendants, the State of Alaska had moved to dismiss all claims against Schafer in her personal capacity. The court never ruled on that motion, which was rendered moot by the issuance of summary judgment.

ingly, if a plaintiff prevails in a damage suit against a state agent personally, the "award of damages ... can be executed only against the official's personal assets...." *Kentucky,* 473 U.S. at 166, 105 S.Ct. at 3105, 87 L.Ed.2d at 121.

We have little doubt that Vest and the plaintiff class do not expect to collect from Schafer's personal funds the huge award they seek. Nor, it seems to us, can Vest expect to collect a personal judgment against Schafer from the State under a respondeat superior theory. To hold the State vicariously liable would violate the prohibition against exacting relief from the State in personal capacity suits. However, Vest specifically argues that he seeks relief from liability insurance Schafer might carry, from indemnification agreements Schafer may have with the State, and from any official bond Schafer may have (e.g., pursuant to AS 39.05.050 and AS 39.15.-010–.100). With the possible exception of indemnification agreements,[45] these are permissible sources of relief in a personal capacity suit.

We believe that a second, less developed, facet of the determination whether a claim is against a state agent personally or against the state itself is whether there is wrongful individual action. In *Ford Motor Co. v. Department of Treasury of the State of Indiana,* 323 U.S. 459, 462, 65 S.Ct. 347, 350, 89 L.Ed. 389, 393 (1945), an eleventh amendment case, the Supreme Court unanimously stated: "Where relief is sought ... from wrongful acts of state officials, the sovereign's immunity under the Eleventh Amendment does not extend to wrongful individual action, and the citizen is allowed a remedy against the wrongdoer personally." Since the present suit is not in federal court, it does not directly involve the eleventh amendment. However, just as it is necessary to determine whether a suit is against the state or a state officer in actions involving the eleventh amendment, so it is necessary in § 1983 and *Bivens* -type actions. We see little reason for the test to be different in the three contexts.

In this appeal, Vest argues that Schafer's individual actions were wrongful:

> The fact that an official failed to consult legal authority before engaging in questionable conduct, as Schafer asserts is the case here, weighs against a finding that the official's conduct was reasonable.... Schafer failed, by her own admission,[46] to act reasonably....

(Footnote added.)

We do not consider Schafer's failure to consult legal authority to be wrongful. In administering the Longevity Bonus Program, she acted in precise compliance with legislative mandates, causing bonuses to be issued only to those who were eligible under the statutes. A government agent, in assessing the legality of her duties, should

---

**45.** It is not settled whether seeking relief through such an indemnification agreement makes the State the real party in interest. In the analogous eleventh amendment context, the Supreme Court determined that a state was the real party in interest in *Edelman v. Jordan,* 415 U.S. at 664, 94 S.Ct. at 1356, 39 L.Ed.2d at 673, stating: "These funds will obviously not be paid out of the pocket of petitioner Edelman." This sentence might be stretched to suggest a rule that if a state volunteers to indemnify a defendant in a damage suit, the suit is really against the state. Professor Tribe argues against such a rule: "[A] state should not be able to turn a purely intramural arrangement with its officers into an extension of sovereign immunity." L. Tribe, *American Constitutional Law* § 3–25, at 177 n. 24 (2d ed. 1988).

**46.** The "admission" to which Vest refers is evidently an argument Schafer made in the superior court in her Motion to Dismiss Claims Against Marian Schafer In Her Personal Capacity:

> Had Mrs. Schafer any reason to believe that she might be personally liable for damages of this magnitude, it is certainly reasonable to conjecture that she might have taken some sort of action, such as engaging her own attorney to assess the validity of the claim. Had she received advice that the claim even arguably had merit, she would have had several options to consider. She might have refused to implement the Longevity Bonus Program, quit her job, sought an opinion from the attorney general as to the propriety of continuing to enforce the statute, or moved for a declaratory judgment.

However, Schafer's statement can scarcely be regarded as an "admission" that she acted unreasonably. She admitted only that it was "reasonable to conjecture" what actions she might have taken.

be entitled to give great weight to the vote of a majority of the legislators who themselves swore to uphold the Constitution. We find no duty on the part of government agents, when acting in their minsterial capacity to execute the letter of the law, to consult legal authority.

Nor do we find a duty among such agents to seek declaratory judgment. Imposing such a duty would only encourage government employees to test all their job responsibilities in court, at pain of personal liability.

Nor did Schafer have a duty to quit her job, or refuse to discharge the ministerial duties with which she had been charged by statute. That is not to say that such a duty can never arise. We think it can, but only where the egregiousness of the State's directive is far more manifest than it was in this case. To require disobedience on the part of government employees whenever their personal assessment of an enactment differs from that of the legislature would accomplish little other than creating chaos in government.

The allegations in the complaint and the facts in the record do not support the imposition of personal liability on Schafer. The essence of Vest's lawsuit is a challenge of state statutes, not a challenge of Schafer's behavior.[47] For this reason, we affirm the superior court's dismissal of Vest's damage claims against Schafer.

AFFIRMED.

---

**47.** Other holdings along these lines are scarce. In *Rosado v. Wyman*, 414 F.2d 170 (2d Cir. 1969), *rev'd on other grounds,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), the plaintiff class sued the New York Commissioner of Social Services in his official and personal capacities, claiming that a New York welfare law violated the Social Security Act. The court stated:

Since the suit here constitutes an attack on a state statute, and not an action taken under it, the plaintiffs' complaint is against the state and not against the Commissioner as an individual. He ... is therefore not within the scope of Section 1983.

414 F.2d at 178 (without further discussion on this point).