Riley T. MORRY, Appellant,

v.

STATE of Alaska, and Don Wilson, individually and in his capacity as a Fish & Wildlife Trooper, Appellees.

No. S–4686.

Supreme Court of Alaska.

April 29, 1994.

William E. Caldwell, Alaska Legal Services Corp., Fairbanks, and Carol H. Daniel, Alaska Legal Services Corp., Anchorage, for appellant.

Randy M. Olsen, Asst. Atty. Gen., Fairbanks, and Charles E. Cole, Atty. Gen., Juneau, for appellees.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

*OPINION*

RABINOWITZ, Justice.

This appeal presents the question whether an individual has a claim for damages in tort against the State, arising out of the State's enforcement of regulations that subsequently were declared invalid.[1]

I. *BACKGROUND*

This appeal is a companion to the appeal in *State v. Morry,* 836 P.2d 358 (Alaska 1992) (*Morry I* ). In *Morry I* we held that

AS 16.05.258(c) mandates that the Board of Game 'shall adopt *Subsistence* ... hunting regulations for each ... population for which a harvestable portion is determined to exist'. Given this command, we conclude that Morry['s] ... argument, that these trophy hunting regulations do not constitute compliance with the requirement

---

1. Appellant Morry formulates the question in the following manner: "May the State be held liable in compensatory damages for the foreseeable harm caused to Morry by the Board of Game's promulgation of regulations in violation of the Board's non-discretionary duty imposed by the subsistence-preference law to adopt *subsistence* hunting regulations?"

of AS 16.05.258(c) that the Board of Game adopt subsistence hunting regulations for the game in question, is persuasive.

*Id.* at 363 (alterations in original) (citation omitted).

Riley Morry has lived in Anaktuvuk Pass for roughly fifty years. He hunts for subsistence purposes, in order to feed his wife and five children. In June 1984 Morry purchased a brown/grizzly bear tag and a "Gates of the Arctic National Park Grizzly Bear Hunting Permit No. 6" from Raymond Paneak, the agent in the village for the Alaska Department of Fish and Game. The locking tag and the receipt for the tag do not show an expiration date. The Gates of the Arctic permit was good for the regulatory year July 1, 1984 through June 30, 1985. Morry's locking tag number was listed on his permit, and Morry possessed the required state hunting license. Morry's affidavit gives the following description of events:

> In May 1985 Patrick Mekiana and I went hunting and fishing. We camped at Little Chandler Lake, northwest of the Village, and spent a day or two ice fishing. Then we went hunting one day and found a grizzly bear near the headwaters of the Kiruktagiak River, to the west of Little Chandler Lake. I shot the bear and we returned to our camp with the bear by the end of the day.... This place [where I shot the bear] is a few miles southwest of a traditional campsite which I and others in the Village have used in the past. Both the place where I shot the bear and the campsite are within the Gates of the Arctic National Park.
>
> The next day Patrick and I returned to the Village with the bear. We completely distributed the meat to various households around the Village. I notified Raymond Paneak that I had taken a bear, and he came over to my house and sealed the bear hide with a metal tag. He did not seal the skull because it needed cleaning. Later Grant Spearman asked me if I would do-

nate the skull to the school because they were studying animals and collecting specimens. I gave the skull to Grant.... I believe the date [of the sealing certificate] is May 16, 1985.

> When Trooper Don Wilson came around investigating my bear harvest, I believe that he learned all of these facts from me and Raymond Paneak. Don Wilson did not tell me that he was going to charge me with any game violations, or even that he thought that I had committed any violations. I was completely surprised when I was served with the charges later that summer.

After learning of Morry's bear harvest, Trooper Don Wilson initiated a criminal investigation. Wilson then filed a criminal complaint against Morry for failure to comply with the regulations. The state later voluntarily dismissed the criminal charges against Morry.

Morry then filed suit in superior court for declaratory relief and damages against Trooper Wilson and the State of Alaska. On cross motions for summary judgment the superior court invalidated the regulations under which Morry had been charged and dismissed all of Morry's tort claims against the State and Trooper Wilson.[2] The State and Trooper Wilson appealed from the superior court's holding that the regulations in question were invalid, and Morry appealed from the superior court's dismissal of his tort claims against the State and Trooper Wilson.

These appeals were bifurcated, and as indicated above, in *Morry I* we affirmed the superior court's invalidation of 5 Alaska Administrative Code (AAC) 92.012(c) (the brown bear tag fee requirement) and 5 AAC 92.165 (the bear sealing requirement) as subsistence regulations. We now address the merits of the superior court's dismissal of Morry's tort claim for compensatory damages against the State based on the State's enforcement of 5 AAC 92.012(c) and 5 AAC 92.165.[3]

---

**2.** Morry states that "[t]he court did not directly address Morry's invalid-regulation theory, but seems to have subsumed the issue in its holding that 'the state cannot be held liable for *money damages* for enforcement of its laws, even if the law is later found to be unconstitutional. *State v. Enserch [Enserch] Alaska Const., Inc.,* 787 P.2d 624, 635 (Alaska 1989).'"

**3.** Morry's other tort claims against Trooper Wilson (and derivatively against the State) asserted

II. *THE DISCRETIONARY FUNCTION EXCEPTION OF THE TORT CLAIMS ACT PROVIDES IMMUNITY TO THE STATE OF ALASKA FROM MORRY'S CLAIM FOR DAMAGES IN TORT ARISING OUT OF THE STATE'S ENFORCEMENT OF REGULATIONS THAT WERE DETERMINED TO BE INVALID* [4]

■ The Alaska Tort Claims Act provides: A person ... having a ... tort claim against the state may bring an action against the state.... However, an action may not be brought under this section if the claim

(1) is an action for tort, and is based upon an act or omission of an employee of the state, exercising due care, in the execution of a statute or regulation, whether or not the statute or regulation is valid; or is an action for tort, and based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a state agency or employee of the state, whether or not the discretion involved is abused....

AS 09.50.250(1).[5]

In *Owsichek v. State, Guide Licensing & Control Bd.*, 763 P.2d 488 (Alaska 1988), Owsichek, a hunting guide, sought a declaration that the Guide Licensing and Control Board's assignment of exclusive guide areas was unconstitutional. *Id.* at 491. In addition to declaratory relief, Owsichek sought damages against the State. Owsichek based his claim for damages in part on allegations that the Board acted without authority in initially promulgating the exclusive guide area regulations and that the regulations failed to comply with relevant legislation that was subsequently enacted.[6] *See id.*

We rejected Owsichek's claim for damages:

We need not decide whether these allegations are true. Even if the Board acted without authority or failed to comply with statutory standards, it is immune from suit under the discretionary function exception provided for in the Tort Claims Act, as interpreted by our prior decisions.

. . . .

The [exclusive guide area] program was a major policy initiative of the GLCB. Therefore, even if the Board acted in excess of its authority or failed to comply with the requirements of the statute, it is immune from suit under the discretionary function exception provided for in AS 09.-50.250.

*Id.* at 498–99 (footnote omitted).[7]

Morry contends that *Owsichek* is inapplicable on two grounds. First, Morry argues

that Wilson was liable, under both state law and 42 U.S.C. § 1983, for malicious prosecution, abuse of process, denial of equal protection, and selective enforcement. Morry has abandoned these claims and points on appeal.

4. Whether the State is immune under the discretionary function exception of the Tort Claims Act presents a question of law, which we review *de novo. See Johnson v. Alaska Dep't of Fish & Game*, 836 P.2d 896, 904–06 (Alaska 1991).

5. Regarding the first clause of AS 09.50.250(1), the State notes that Morry has abandoned any claim that Trooper Wilson committed errors in enforcing the invalid regulations. The State further contends that in the absence of any allegations that Trooper Wilson was not using due care, the first clause of this statute "completely shields" the State from Morry's suit.

6. In our decision we noted that Owsichek did not base his claim for damages on the legislature's enactment of an unconstitutional statute. *Id.* at 498 n. 19. We further observed that had he raised such an argument, it would have failed under our holding in *Vest v. Schafer*, 757 P.2d

588, 598 (Alaska 1988). *Owsichek*, 763 P.2d at 498 n. 19. In *Vest* we wrote, "[W]e do not believe it proper for the judiciary to assess damages against the State on the ground that the legislature enacted a law later held unconstitutional, in the absence of a statute allowing or requiring such damages." 757 P.2d at 598.

7. In reaching this conclusion we referred to relevant precedent:

In at least two cases, we have held that acts of public officials who in good faith misinterpret the law and act in excess of their authority are immune from suit. *Earth Movers of Fairbanks, Inc. v. State*, 691 P.2d 281, 283–84 (Alaska 1984) (police officer lacked authority to temporarily reduce speed limit); *Bridges v. Alaska Housing Authority*, 375 P.2d 696, 698, 702 (Alaska 1962) (housing authority lacked power to use declaration of taking). We have also held that decisions involving the formulation of basic policy are entitled to immunity. *See Industrial Indemnity Co. v. State*, 669 P.2d 561, 563 (Alaska 1983).

*Id.* at 498.

that the legislature's enactment of former AS 16.05.255(b) imposed a non-discretionary duty on the Board of Game to adopt subsistence hunting regulations for each animal population for which a harvestable portion is determined to exist.[8] More particularly, he asserts that the discretionary function exception of the second clause of AS 09.50.250(1) is unavailable to the State for the "simple reason that the duty was *not* discretionary." In short, he contends that the legislature alone formulated policy, by mandating the promulgation of subsistence hunting regulations, and that the Board had no discretion other than to carry out this ministerial duty.[9] Second, Morry urges us to reject the State's contention that the legislature gave the Board discretion to refuse to adopt subsistence hunting regulations.

We are not persuaded by Morry's arguments and therefore hold that the discretionary function exception of AS 09.50.250(1), as interpreted in *Owsichek*, provides immunity to the State from Morry's tort claim for compensatory damages based on the State's failure to adopt subsistence brown bear hunting regulations. We reach this conclusion for the following reasons.

Former AS 16.05.255(b) provided in part: The Board of Game shall adopt regulations in accordance with the Administrative Procedure Act (AS 44.62) permitting the taking of game for subsistence uses unless the board determines, in accordance with the Administrative Procedure Act, that adoption of the regulations will jeopardize or interfere with the maintenance of game resources on a sustained-yield basis. Whenever it is necessary to restrict the taking of game to assure the maintenance of game resources on a sustained-yield basis, or to assure the continuation of subsis-

tence uses of such resources, subsistence use shall be the priority use.

The wording of former AS 16.05.255(b) negates Morry's contention that the statute's effect was to impose a mandatory ministerial duty upon the Board to adopt subsistence regulations. As our decisions reflect, the subject of subsistence is a very complex one, which requires the consideration of numerous and often competing policies, as well as analysis of massive amounts of subsistence data, all of which are relevant to the promulgation of subsistence regulations.[10] Further, the text of former AS 16.05.255(b) directs the Board of Game to make determinations as to the impact of subsistence uses on the maintenance of game resources on a sustained yield basis and to impose restrictions if necessary. These statutory provisions explicitly vest the Board with discretionary policymaking authority and cannot reasonably be read as mere ministerial directives.

■ Furthermore, in the case at bar the trophy hunting regulations which were declared invalid under *Morry I* antedate the enactment of AS 16.05.258(c). Morry's original claim asked that these regulations (under which he was charged) be declared invalid because of a failure to review them after the enactment of the subsistence statute. Thus this is not a case where the Board of Game completely defaulted upon its obligation to adopt subsistence regulations. Here the Board mistakenly relied on existing trophy regulations for compliance with the requirements of AS 16.05.258(c). Our determination in *Morry I* that the Board of Game's reliance on the trophy regulations constituted a failure to comply with statute's requirement did not, under *Owsichek*, divest the State of its

---

8. Morry's theory of liability is that the Board of Game's failure to comply with this non-discretionary duty, imposed by the legislature, to adopt subsistence brown bear hunting regulations caused him direct harm by subjecting him to the foreseeable trauma and expense of criminal prosecution.

9. Morry supports this argument by citing *Division of Corrections v. Neakok*, 721 P.2d 1121, 1133 (Alaska 1986), where we stated:

[O]nly decisions that rise to the level of basic planning or policy formulation will be considered discretionary; decisions that implement policy decisions and are ministerial or operational in nature will not be immune.

10. *See, e.g., State v. Kluti Kaah Native Village*, 831 P.2d 1270, 1271–72 (Alaska 1992); *Madison v. Alaska Dep't of Fish & Game*, 696 P.2d 168, 170–72 (Alaska 1985); *State v. Tanana Valley Sportsmen's Ass'n, Inc.*, 583 P.2d 854, 856, 859 (Alaska 1978).

immunity under the discretionary function exception to the Tort Claims Act.[11]

AFFIRMED.

11. Our disposition makes it unnecessary to ad-     dress any remaining contentions of the parties.